Good morning, your honors. My name is Ben Davis, a federal offender to San Diego, and I represent the appellant Josue Michel. Your honors, in Moncrief v. Holder, the Supreme Court made clear that state felon and possession offenses can be overbroad to qualify as removable offenses because of the federal antique firearms exception. The court in that case indicated that an antique firearms challenge to an aggravated felony or, by implication, to a firearms offense ground of removal can be made under the case Duaneus Alvarez v. Gonzalez, which permits a collateral attack if the respondent can show that there is a reasonable probability that the state actually will punish that conduct under its statute. In this case, Mr. Michel was convicted in 2006 of California's felon and possession of a firearms statute, which is section 12021A. That section makes no exceptions for an antique firearm, which are specifically and expressly exempted from the analogous federal definition at 18 U.S.C. 921A16. Is that an affirmative defense in California? Your honor, it's not an affirmative defense, I believe, under California law. California law makes no exceptions whatsoever for an antique firearm. So a person who, a felon who is found to be in possession of an antique firearm can be convicted under that statute. Whereas under the analogous federal statute, 922G, antique firearms, which have a precise definition that are given in section 921, are specifically exempted from those criminal provisions. So a person can be convicted in California for conduct that would not be punished under the federal law. And in my 928J, I submitted, I believe, five California cases that reflect that the defendant in those cases was convicted of possessing firearms that would satisfy the federal definition of an antique firearm. So that makes the showing that's required under Duenas-Alvarez, that a respondent show that his conviction could have been for this overbroad conduct that would not have satisfied the federal conviction. What do you do with the problem that at the beginning of the proceedings he concedes removability? And as I read it, if we can hold him to it, he basically concedes conviction under the modified categorical approach. Your Honor, in the proceeding, Mr. Michel did admit the fact of the conviction that he'd been convicted under this statute. At the pleading stage? That's correct, Your Honor. He did admit the fact of the conviction, and he conceded removability. However, I'll note that he was not represented by counsel, which – Isn't he still bound by that? Aren't pro se aliens bound by concessions they make under the law? I don't think that's ever been expressly held by this Court, Your Honor. But the regulation that governs the proceedings, 8 CFR section 1240.10, requires that an immigration judge, before he can move on, before he can accept the admissions and the concessions of removability, still needs to be satisfied that no issues of law or fact remain. And that puts an affirmative obligation on the immigration judge that before he can accept a concession, especially by an unrepresented respondent, that he has to be satisfied that the facts that the alien has admitted – Now, are you talking about the pleading stage or the evidentiary phase? Well, Your Honor, I think – At the pleading stage, do you have to stop and – what do you have to stop and do, and where do you find that in the law? Well, Your Honor, the regulations require the immigration judge to ask the respondent of the factual admissions that are alleged in the notice to appear. And that's the pleading stage that's defined under the – And that happened?  And the alien said, I agree, I admit. That's correct, Your Honor. He said that he admitted the – So what else has to – should have been done to make that valid? Well, Your Honor, the judge has to be satisfied that no issues of law or fact remain. That's what the language of the regulation – Is there anything here that shows that the judge was not satisfied? Or what would suggest that a reasonable judge would not have been satisfied? Because the fact of admission of a conviction under 12021A does not answer the question of whether he was in fact removable for a firearms offense or for an aggravated felony. That he admitted he'd been convicted under the statute, that's correct. But there still remained the question of whether that statute constitutes an aggravated felony. And does that rely entirely on Moncrief, your argument? Of course – Excuse me? Does that rely on your Moncrief argument? Yes, Your Honor. Which was decided how many years later? It was decided just several weeks later. I realize that. Does that have an effect on all of this? Yeah, it does – excuse me. I believe it does, Your Honor, because the Supreme – this Court has repeatedly applied the Supreme Court's construction of substantive criminal statutes to removal hearings that took place before the Supreme Court made that construction. For example, in Camacho Lopez, which I cited in my brief, the respondent had been removed in 1998 for a DUI offense, which had been called an aggravated felony. And this Court, after the Supreme Court's decision in Leocal, applied Leocal and said, no, the immigration judge was incorrect based on our subsequent substantive interpretation of that statute. And said that it was not an aggravated felony and that he therefore should not have been deported. Camacho Lopez also gives why Mr. Monc – excuse me, Mr. Michel was prejudiced by the immigration judge's failure to hold the government to its evidence at this hearing. His conviction is neither an aggravated felony nor a categorical firearms offense because of the antique firearms exception. And based on that, the immigration judge should have terminated proceedings. And the fact that he didn't terminate proceedings means that Mr. Michel was removed when he should not have been. And under Camacho Lopez, that satisfies the prejudice requirement of fundamental unfairness under Section 1326D. Let me try to catch up with you for a second. You say you filed a 28-J letter showing that California does prosecute antique firearms offenses under this statute? That's correct, Your Honor. I don't have it. When did you file that? It was – let me just find my dates, Your Honor – on May 23rd, Your Honor. I cited People v. Severn, People v. Charlton, People v. Kaufman, and People v. Cushman, which are all cases from the California Court of Appeals. Well, for one reason or another, I don't have it. And, Your Honor, just to speak briefly to – I believe the government intends to rely on this Court's recent decision in Vidal v. Mendoza to suggest that the law that was applicable at the time – at the hearing is the law that should have governed the IJ's analysis. That's what I was getting at on the Moncrief. Well, Your Honor, Vidal v. Mendoza dealt with a slightly different factual scenario. And I'm going to answer this question, and then I'd like to reserve the remainder of my time. In Vidal v. Mendoza, the question was whether the respondent was eligible for a particular form of relief from removal. And that case interpreted the immigration judge's duty under the regulation to inform an alien of any apparent relief that he had. So the analysis is really tightly circumscribed to that particular duty of the immigration judge, to inform someone of relief which is apparent and eligible at the time of the hearing. This question has to do with the substantive interpretation of a criminal statute, whether or not a criminal statute is, in fact, an aggravated felony or a firearms offense. And as I've said, in Camacho Lopez and in other cases as well, this Court has repeatedly applied later Supreme Court precedent to removals that happened beforehand to hold that those removals were obtained in violation of due process. And I'd like to reserve the remainder. Okay. Thank you. May it please the Court. Good morning. Mark Rahe for the United States. Your Honors, in this case, there is no way to get to the merits without overcoming the concession of removability. As reflected in the removal hearing transcript, this IJ in this particular removal hearing never had any doubts that any material issues were left unresolved. In this Court's recent cases of Perez Mejia and Pagayan, the Court draws a distinction between, as we discussed earlier, pleading stage and evidentiary stage. Although there is no clear line when this ends, the case law indicates you only go from one stage to the next if there's evidence that a material issue is still in dispute or that the IJ has any concerns. I would submit when you review this record, you see no such evidence of any material issue or any concern. What about the waiver of his appeal rights, whether it was knowing and voluntary, whether he knew what he was giving up? Is that an issue? Are you talking about the exhaustion of remedies? Yes. In this case, I know my opponent pointed out the group advisal isn't in the record. There's no question that at the end of the hearing, he's asked point blank, do you appeal or do you waive? And he waives the appeal. Any indication that he knew what he was doing? Was there any explanation of what that waiver involved? In all candor, Your Honor, in the record, there isn't right now. I can represent to you as an officer of the court, I have since pulled the removal hearing tape from that group advisal, and there is an explanation there. But that's the reason. I'm sorry. There is an explanation? Yes. Is that formally part of the record in this case? No. Not now. So that's why the government, we won't even ask this court, doesn't have to even reach that exhaustion, failure to exhaust. I just wanted to make sure I covered all my bases. My opponent pointed that out. But I think even without that, not only the concession of removability, but there's a waiver issue here under Rule 12B. And that's something I know my opponent didn't decide or didn't address. 12B makes very clear that a motion to dismiss an indictment must be made before trial. And unlike a trial error, those failures to preserve are waived and not subject to plain error review. And I know my opponent in his reply brief, he draws on a case, United States v. Polaris-Gallon, to talk about a distinction that claims are not waived, arguments are. But I think the facts of this case provide a ready distinction with Polaris-Gallon. In Polaris-Gallon, there was a motion to dismiss at the district court level. The basis was that an aggravated felony or a prior relevant conviction there was not an aggravated felony. Why? Because it was just punished as a misdemeanor under state law. On appeal, the same claim was made that the prior conviction was not an aggravated felony, but this time an alternative argument was presented because it didn't satisfy the categorical approach. And this court in Polaris-Gallon found that there was no waiver because it was the same claim going after the same basis of removal, just an alternative argument. And in fact, Polaris-Gallon even pointed out, in addition to that, the defendant had actually verbalized his categorical approach argument in district court and the government had actually briefed it. So in Polaris-Gallon, there was no question that there had been no waiver. Here, on the other hand, it was clear from the outset there was only one removal at issue, two separate bases of removability, both the firearms defense and the aggravated felony. In district court, the defense never said word one about the firearms defense. It was geared all to the aggravated felony basis of removal. And sometimes the court may worry about waiver or maybe they didn't know about it. A lot of the arguments that they're making about the antique firearm exception, that's been part of the Title 21, that definition, long before this case. And not only that, in the government's opposition to the motion to dismiss below, we specifically said the odd thing about this case is there are two bases of removability, but the defendant's only going after one. So I know it's a waiver defense, but I think under Restrepo Rua, Murillo, Wright, the law is clear here that in order to be timely, a motion challenging a defect in indictment has to be made before trial. And I respect my opponent. I know he wants to get to the merits. I think you can't get there if you abide by the circuit's law on waiver and as well as that concession of removability. But even if you want to talk about the merits, Moncrief, it just came out a few weeks ago, I also filed an Opposition 28J letter, but this is the government's position on Moncrief. Of course, it didn't actually go after the decision or after the issue, is an affirmative defense cognizable under a categorical approach. It did hold that sometimes you look at more than just elements. And a lot of this Court's prior cases had limited the categorical approach to just an element. But it didn't talk about affirmative defense. Since the government would submit, there's still a substantive difference between mitigating sentencing exception and affirmative defense. But more importantly, I know my opponent used the words that Moncrief makes clear that this antique firearm exception somehow throws all the law into a, what's the word, instability. But it's not true. It was dictated in the last penultimate paragraph. It wasn't squarely presented. But the government's position is this. I'm going to assume that Moncrief says everything that the defense wants it to. Vidal Mendoza, which was decided after the briefing in this case, has made clear that on collateral review, a prior removal is judged under the law in effect at the time. On collateral review. That may be part of the foundation of your argument. Is that right? Correct. And in this case, he was removed in April of 2007. In 1993, the BIA had precedent out matter of PF. And that was cited in my response to 28J. For, I guess that's 14 years, that was in effect. And it held that the affirmative or that the antique firearm exception was an affirmative defense that had no role to play in the categorical analysis. Now, in his 28J letter, I know my opponent tries to, and he mentioned it earlier, he tries to distinguish Vidal Mendoza on two grounds. The first one he didn't mention in argument, but I do want to address it, was in his letter. He said at the time, there was no controlling Ninth Circuit authority. He doesn't deny the fact that there was controlling BIA authority. The government's position is that's a distinction without a difference. When you look at Vidal Mendoza, and not only Vidal Mendoza, but also Lopez Velasquez, which was this court's en banc decision from the year prior, that started this movement towards we're only going to hold IJs to the law in effect at the time. Both Lopez Velasquez and Vidal Mendoza looked to see whether not only there was on point Ninth Circuit authority, but also whether there was on point BIA authority. There would have been no need for this court to look at the existence of BIA authority if it wasn't relevant. And, of course, as this court realizes, IJs obviously are bound by Ninth Circuit decisions, but there tend to be a lot more BIA decisions. And if we're going to ask on a collateral review whether something was lawful at the time, an IJ is bound to follow BIA law. And here there's no question that there was on point law that said this anti-firearm, this minuscule exception is not something of significance for the categorical approach. Now, the other basis that my opponent wanted to distinguish the government's position is it's a distinction without a difference. Without a doubt, every removal hearing is basically divided into two sections. First, the government has to prove removability, and then you talk about issues of relief. It's true that Vidal-Mendoza arose in the issue of relief, whereas this case is about removability. But it's still the same basic idea. My opponent says, well, this case is about a substantive interpretation of the law, whereas Vidal-Mendoza was about advising of eligibility for relief. But you only advise of eligibility for relief under Vidal-Mendoza if you make the same sort of categorical analysis of the classification of a prior conviction. The reason that Vidal-Mendoza said that an I.J. had no duty in that case was because it looked at the particular conviction at issue, which was sexual abuse of a minor, and it said under the categorical approach, a pure issue of law, statutory construction, and substantive interpretation, at the time of the I.J. removal in that case, that conviction was sexual abuse of a minor. And then four years later, this case decided, or this court decided to stride Espinoza. The government would submit, even though that pure legal substantive issue occurred in the relief stage, how is it a distinction with the difference to say this case involves the exact same kind of legal construction, albeit at a different stage? In the end, my opponent's position would lead to somewhat absurd results. It would basically be saying every removal, half of it is decided by the law now, half of it is decided by the law at the end. That's something that I don't think is a rational view of the law that this Court should advance. And just a couple other points I wanted to make. I know Judge Stein, going back to the concession of removability, obviously it's always better when an alien is represented. But between Pagayan, I believe that alien was not represented. And Perez-Mejia and Pagayan make clear that whether they're represented or not, these concessions of removability are valid. And secondly, for all the reliance that my opponent puts on Camacho-Lopez, I would say in that case, even though it's true that the Court applied a substantive Supreme Court case to a prior removal, there was a very important distinction. Namely, the government conceded that retroactivity. And that case was in 2006. As this Court well knows, any time a principle of law is conceded or assumed, it doesn't bind future panels. And so the government's position would be when this Court came to Vidal-Mendoza and addressed this square on, it now stands for the proposition that you only judge a prior removal under the law in effect at the time. And unless the Court has any further questions, the government would submit. Okay. Thank you. Just a couple of brief responses, Your Honors. The government mentioned the cases of Perez-Mejia and Pagayan, which are cases that stand for the proposition that an alien's admissions and concessions at the pleading stage resolve the question of removability. Those cases are distinguishable because the convictions in those cases were overbroad as to the nature of the substance involved. They were drug convictions. And the question was, was it a drug crime that punished a federally prescribed substance or not? And in the pleading stage, the aliens admitted sufficient facts to narrow the conviction. They said it was two-wit methamphetamine or two-wit cocaine. I can't remember the specific drug. And the aliens said, yes, I admit that that was what I was convicted of. So after the immigration judge hears that concession, there is no more, there are no more legal or factual questions left because the aliens admitted facts at the pleading stage that satisfy the question of whether the conviction is a removable offense or not. In this case, Mr. Michel admitted he'd been convicted of the statute of 12021A, and he said the name of the statute, which is possession, felon in possession of a firearm. But there were no facts from that admission that would enable the immigration judge to know whether or not, in fact, it was an aggravated felony or whether it was a firearms offense or not. So the regulation requires that he be satisfied that no further issues remain. And so I think that he did then have a duty to go on and narrow that conviction after that. In response to the government's plea. If he had at that time gone on to see what the law would have been at that time with respect to antique firearm, what would the IJ have discovered? Your Honor, there would have been no Ninth Circuit precedent on point at all. And he would have, as the government, as Mr. Rahe points out, he would have relied on the BIA opinion. And the BIA opinion had said at the time that it was an affirmative defense that the alien could bring forward affirmative evidence that he hadn't been, that it had been an antique at the time. However, I think that, as I've said, in previous cases, the question is whether the government has met its burden of removability, of proving removability by clear and convincing evidence. This Court has repeatedly applied subsequent Supreme Court question to that precedent, to that question. So I see my time is up. Thank you very much. I thank both sides for your arguments. United States v. Michelle is now submitted for decision. The next case on the argument calendar this morning, Gonzalez v. Holder. Thank you.
judges: Stein, Trott, Fletcher